## HESS v CANNON TOWNSHIP

Docket No. 248974. Submitted October 5, 2005, at Grand Rapids. Decided March 31, 2005, at 9:05 a.m. Leave to appeal sought.

Joseph M. Hess and William Wheeler, taxpayers in Cannon Township, brought an action in the Kent Circuit Court against Cannon Township and Grattan Township, seeking to prevent Cannon Township from disbursing or contributing funds toward the costs Grattan Township incurred in litigating a case related to a manufactured housing development in Grattan Township near its border with Cannon Township and to require Grattan Township to reimburse $90,000 already advanced by Cannon Township. The court, James R. Redford, J., granted summary disposition for the townships, ruling that Cannon Township had a legitimate and compelling interest to participate in, and to assist with, the litigation involving Grattan Township and the developer, and that the Cannon Township board had constitutional and statutory authority to act as it did. The plaintiffs appealed.

The Court of Appeals *held*:

1. Cannon Township has the authority to expend money for legal fees incurred by Grattan Township in the land use litigation under Const 1963, art 7, § 34 and MCL 41.2. Although townships have no inherent powers, they possess broad powers conferred on them by the Legislature and the Constitution. Const 1963, art 7, § 34 provides that constitutional provisions and laws concerning townships are to be liberally construed in their favor and that powers granted to townships by the Constitution and by law are to include those fairly implied and not prohibited by the Constitution. MCL 41.181 grants townships the power to enact ordinances that regulate the public health, safety, and general welfare. MCL 41.2(1)(b) provides townships with authority to make contracts necessary and convenient for the exercise of their corporate powers. Cannon Township opposed the proposed land use consistently with its power to protect the public health, safety, and general welfare of Cannon Township residents and it had the authority to assume a contractual obligation to help Grattan Township defray the cost of the land use litigation.

2. Elector approval was not necessary for Cannon Township's expenditure. Although MCL 41.8 does indicate that an annual meeting of electors must approve expenditures, it also provides that where, as here, the township does not have an annual meeting, the township board may act on the same matters as the electors could have at an annual meeting.

Affirmed.

SMOLENSKI, J., dissenting, stated that he could find no constitutional or statutory authority for Cannon Township to expend funds to assist a neighboring township with the expenses incurred in a legal dispute. Townships may expend funds only if expressly or impliedly authorized by a statute or the Constitution. There is no underlying separate and distinct grant of power that would allow Cannon Township to enter the contract with Grattan Township to share the latter's expenses. The purposes for which a township board may appropriate money are listed in MCL 41.110c, and, even construing these liberally, none can fairly be construed to encompass providing funds to cover another township's legal costs. Summary disposition should have been granted for plaintiffs under MCR 2.116(I)(2) and 7.216(A)(7).

MUNICIPAL CORPORATIONS — TOWNSHIPS — POWERS.

Townships have no inherent powers as they only possess powers conferred by the Legislature or the Michigan Constitution; constitutional and statutory provisions concerning townships are to be liberally construed in their favor, and powers granted to townships by law or the Constitution are to include those fairly implied and not prohibited by the Constitution (Const 1963, art 7, § 34).

*Allan Falk, P.C.* (by *Allan Falk*), for the plaintiffs.

*Mika Meyers Beckett & Jones PLC* (by *William A. Horn* and *Ronald M. Redick*), for the defendants.

Before: NEFF, P.J., and SMOLENSKI and SCHUETTE, JJ.

SCHUETTE, J. Plaintiffs Joseph M. Hess and William Wheeler appeal as of right the trial court's order granting defendants' motion for summary disposition pursuant to MCR 2.116(C)(10). This case concerns whether Cannon Township may disburse or contribute funds to help defray or otherwise share the legal costs incurred

by a neighboring township—Grattan Township—in a land use controversy that both townships oppose. The trial court dismissed plaintiffs' complaint because it concluded that Cannon Township had the authority pursuant to MCL 41.2 and that Cannon Township had a legitimate, compelling, and valid public policy interest in the litigation in which Grattan Township was involved. We affirm the decision of the trial court.

## I. FACTS

Grattan Township was involved in litigation with Landon Holdings, Inc. (Landon), a developer seeking to build a manufactured housing community on property located in Grattan Township on its border with Cannon Township. Cannon Township attempted to intervene in that litigation, but its petition was denied.

On November 11, 2002, the Cannon Township board adopted two separate formal resolutions setting forth its findings of fact with respect to the adverse impacts that the Landon mobile home park would have on both Cannon Township and Grattan Township. The first resolution, entitled: "Resolution Regarding Cannon Township's Interest in Defending Regional Land Use Planning for Manufactured Housing Communities," provides;

> WHEREAS, a manufactured housing community developer (the "Developer") sought and was denied zoning approval by Grattan Township for a proposed 690-unit manufactured housing community to be located on lands to the northeast of Highway M-44 and Tiffany Avenue, in Grattan Township, but immediately adjacent to Cannon Township's eastern border (the "Subject Property");
>
> WHEREAS, the Developer has filed three separate lawsuits against Grattan Township in an attempt to obtain

a court order allowing its proposed manufactured housing community to be developed on the Subject Property; and

WHEREAS, both Cannon Township and Grattan Township have adopted future land use planning provisions in their Master Plans indicating that housing communities should not be located in the vicinity of the Subject Property.

Now, therefore, be it hereby resolved as follows:

1. *Adverse Impacts on Cannon Township and Grattan Township.* The Township Board hereby finds and declares that the Developer's proposed manufactured housing community, due to its proposed location on the border between Grattan Township and Cannon Township, would have the following adverse impacts on both Cannon Township and Grattan Township:

a. As detailed in the traffic report prepared by the URS, the proposed manufactured housing community would cause unacceptable levels of service at intersections on M-44 in Cannon Township; would greatly increase traffic all the way through Cannon Township on M-44 and on other north-south roads in Cannon Township that would be used to travel to and from Northland Drive, greater Grand Rapids and the proposed manufactured housing community location; and would thereby endanger the health, safety and welfare of Cannon Township and Grattan Township residents who use M-44 and other north-south roads in Cannon Township as the primary routes of access into and from the Grand Rapids metropolitan area.

b. The proposed manufactured housing community would be totally out of character with the Agricultural zoning in Grattan Township and the adjacent Agricultural-Residential zoning in Cannon Township.

c. The proposed manufactured housing community would likely spur a demand for new commercial development in the surrounding areas of Cannon Township and Grattan Township, and such commercial development would be incompatible with both Cannon Township's and

Grattan Township's future land use plans, which designate these areas for Open Space Residential and Agriculture.

d. Children living in the proposed manufactured housing community would attend the same schools attended by children living in both Cannon Township and Grattan Township, which would likely lead to overcrowding and a diminishment in quality of these schools.

e. The proposed manufactured housing community would not be in an area where public facilities have adequate capacity or are expected to be extended so as to accommodate the anticipated growth in Cannon Township and Grattan Township that would result from such development.

f. The proposed manufactured housing community would be located in a vulnerable watershed area where intensive development should not be permitted because of the risks of pollution, sedimentation and flooding in both Cannon and Grattan Townships.

2. *Joint Interests of Cannon Township and Grattan Township.* The Township Board hereby finds and declares that, because of the potential adverse impacts on Cannon Township and Grattan Township, both Townships share a joint interest in ensuring that the Developer's proposed manufactured housing community is not permitted by court order or otherwise.

3. *Public Purpose.* The Township Board hereby finds and declares that appropriate actions by or on behalf of Cannon Township to ensure that the proposed manufactured housing community is not developed would serve a public purpose.

4. *Township Purpose.* The Township Board hereby finds and declares that appropriate actions by or on behalf of Cannon Township to ensure that the proposed manufactured housing community is not developed would serve a valid Township purposed for the residents of both Cannon Township and Grattan Township.

5. *Assistance to Grattan Township.* Based on the foregoing findings, the Township Board hereby approves the

expenditure of Township funds, in amounts approved by the Township Board from time to time, for the purpose of defraying and/or reimbursing the costs and expenses that Grattan Township has incurred in defending the lawsuits filed by the Developer and otherwise responding to the Developer's actions in furtherance of the proposed manufactured housing community.

The second resolution was entitled: "Resolution Authorizing Disbursement of Township General Funds for the Purpose of Defending Regional Land Use Planning for Manufactured Housing Communities." This second resolution reaffirmed and recited similar findings of fact as the first resolution and also authorized the disbursement of $90,660 to Grattan Township to assist in reimbursing and defraying the costs of legal proceedings already incurred by Grattan Township's lawsuit with Landon.

Cannon Township and Grattan Township then executed an agreement that provides the following:

WHEREFORE, in consideration of their mutual promises, the parties hereby mutually agree as follows:

1. Cannon Township will disburse funds to Grattan Township, in amounts approved by the Cannon Township Board from time to time, for the purpose of defraying and/or reimbursing portions of the costs and expenses that Grattan Township has incurred or will incur in defending the lawsuits filed by the Developer and in otherwise responding to the Developer's actions in furtherance of the proposed manufactured housing community.

2. Grattan Township will use said disbursements from Cannon Township only for the purpose of defraying and/or reimbursing the legal fees, expenses, costs and other professional service fees Grattan Township has incurred or will incur in defending the lawsuits filed by the Developer and in otherwise responding to the Developer's actions in furtherance of the proposed manufactured housing community.

Plaintiffs, taxpayers who reside in Cannon Township, brought suit alleging they suffered damages as result of Cannon Township's unlawful expenditure of the township's general funds. Plaintiffs requested that the trial court declare that Cannon Township's disbursement of township funds to Grattan Township was unlawful, order that Grattan Township immediately return the $90,660 to Cannon Township, and permanently enjoin Cannon Township from making any future disbursements of township general funds for the purpose of defraying legal costs incurred by Grattan Township.

Defendants filed a motion for summary disposition pursuant to MCR 2.116(C)(10). Defendants stated in their motion for summary disposition that not only did the Cannon Township board make amply supported factual findings in support of its determination that financial assistance to Grattan Township would serve a valid public purpose, it also ensured that from an auditing perspective, the expenditure would be acceptable to township auditors.[1]

A hearing was held on May 2, 2003. The trial court concluded that the Cannon Township board had a legitimate and compelling interest to participate in, and to assist with, the litigation involving Grattan Township and Landon. The trial court also concluded that the Cannon Township board had the authority to act pursuant to the Michigan Constitution and MCL 41.2. The trial court granted defendants' motion for summary disposition.

---

[1] Defendants attached the affidavit of Michael J. Crandall, a certified public accountant with Siegfried Crandall, P.C., who stated that it was his opinion that such expenditures would serve a strong and valid public purpose and that such expenditures would be approved by his firm as auditors for Cannon and Grattan townships.

## II. STANDARD OF REVIEW

On appeal, a trial court's decision on a motion for summary disposition is reviewed de novo. A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. When deciding a motion for summary disposition under this subrule, a court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence submitted in the light most favorable to the nonmoving party. See *Corley v Detroit Bd of Ed,* 470 Mich 274, 277-278; 681 NW2d 342 (2004).

This Court reviews de novo the interpretation and application of a statute. *Eggleston v Bio-Medical Applications of Detroit, Inc,* 468 Mich 29, 32; 658 NW2d 139 (2003). Constitutional issues are also reviewed de novo on appeal. *Mahaffey v Attorney General,* 222 Mich App 325, 334; 564 NW2d 104 (1997).

### III. ANALYSIS

#### A. CONSTITUTIONAL AND STATUTORY AUTHORITY FOR CANNON TOWNSHIP'S EXPENDITURE

The trial court did not err in granting defendants' motion for summary disposition. The provision of money by Cannon Township to Grattan Township was lawful pursuant to MCL 41.2(1)(b) as part of its authority to enter into contracts when necessary and convenient for the exercise of Cannon Township's corporate powers.

Determining the validity of the agreement between Cannon Township and Grattan Township and Cannon Township's decision to help defray the legal cost of a mutually shared land use issue starts with the Michigan Constitution. Const 1963, art 7, § 34 states:

The provisions of this constitution and law concerning counties, townships, cities and villages shall be *liberally construed* in their favor. Powers granted to counties and townships by this constitution and by law shall include those *fairly implied* and *not prohibited* by this constitution. [Emphasis added.]

So, for our analysis, the Michigan Constitution requires that we liberally construe the implied powers of Cannon Township, with a cautionary reminder not to judicially approve any act prohibited by the Michigan Constitution.

As decided in *Howell Twp v Rooto Corp,* 258 Mich App 470, 475; 670 NW2d 713 (2003), townships have no inherent powers, they only possess powers conferred on them by the Legislature or the Michigan Constitution. "The township ordinance act, MCL 41.181, is the basic enabling act granting townships the power to enact ordinances that regulate the public health, safety, and general welfare." *Id.* While the provisions of the Constitution and law regarding counties, townships, cities, and villages must be liberally construed in their favor, the powers granted to townships by the Constitution and by law must include only those fairly implied and not prohibited by the Constitution. Const 1963, art 7, § 34; *Howell Twp, supra* at 475-476.

Having reviewed the implied powers provided townships by the Michigan Constitution pursuant to Const 1963, art 7, § 34, we must next examine any statutory powers provided to townships by the Michigan Legislature. The Michigan Legislature pursuant to MCL 41.2 does indeed specify certain powers and duties of a township. MCL 41.2 provides:

(1) The inhabitants of an organized township are a body corporate and have, in addition to other powers that are conferred, all of the following powers and duties:

(a) To sue and be sued and appoint necessary agents and attorneys for that purpose.

(b) To make contracts necessary and convenient for the exercise of their corporate powers.

(2) In addition to other powers that are conferred, the township board may investigate any matter that is under the jurisdiction of the township and the authority vested in the township or an officer under this act. The supervisor or the township board by majority consent of the township board members serving may serve upon a person a subpoena that has been authorized by a court of proper jurisdiction in the county in which the township is situated compelling the person to appear before the board or a committee of the board to be examined under oath or to produce a document or object for inspection or copying. If a person objects to or otherwise fails to comply with the subpoena served upon him or her, the supervisor or the township board by majority consent of the township board members may file in that court an action to enforce the notice. The court may issue an order requiring the person to appear to be examined or to produce a document or object for inspection or copying. Failure to obey the order of the court is punishable by the court as a contempt.

(3) By resolution of the township board, a majority of the members serving may acquire property for public purposes by purchase, gift, condemnation, lease, construction, or otherwise and may convey or lease that property or part of that property not needed for public purposes.

(4) A suit, act, or proceeding, by or against a township, in its corporate capacity, shall be in the name of the township. The supervisor of each township shall be the agent for his or her township for the transaction of legal business, by whom a suit may be brought and defended, and upon whom process against the township shall be served.

Here, the liberally construed, implied powers provided to townships by the Michigan Constitution, art 7, § 34, and the statutory authority of townships "to make

contracts necessary and convenient for the exercise of their corporate powers," MCL 41.2(1)(b), validate the agreement between Cannon Township and Grattan Township. Cannon Township's determination to help defray legal expenses incurred by Grattan Township caused by a land use controversy on their shared border, which use both units of government opposed, was a proper disbursement of township funds by defendant Cannon Township.

The essential elements of a valid contract are the following: "(1) parties competent to contract, (2) a proper subject matter, (3) a legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *Thomas v Leja*, 187 Mich App 418, 422; 468 NW2d 58 (1991) (citations omitted). This Court stated, "It is a fundamental principle of contract law that a promise to pay is not binding if made without consideration." *Id.* (citations omitted). Here, in return for a pledge to help pay Grattan Township's legal costs, Cannon Township received the benefit of those legal services. Thus, a contractual relationship was formed between the two townships.

Our reasoning in this case is in keeping with the requirement that for the disbursement of Cannon Township funds to Grattan Township to be a valid expenditure, there must be a statute or constitutional provision that expressly or impliedly authorizes that type of expenditure. *Howell Twp, supra* at 475. The Michigan Constitution, Const 1963, art 7, § 34, impliedly authorizes this type of expenditure and MCL 41.2(1)(b) expressly authorizes this type of expenditure.

In essence, plaintiffs argue that the powers of a township are sparse, able to fit in a snack-size Ziploc bag. Plaintiffs are incorrect. "Townships generally have power to buy, hold, and sell property; to levy and collect

taxes; to borrow money; to make contracts; to exercise police power; to condemn private property for public purposes; to receive gifts of real and personal property for public purposes; to use funds from government grants to promote local business; and to sue and be sued." 24 Michigan Civil Jurisprudence, Townships, § 84, pp 355-356. Townships are granted the power to adopt ordinances and regulations under MCL 41.181 regarding the public health, safety, and general welfare of its citizens and property. Further, MCL 41.806 gives townships broad powers to establish and maintain police and fire departments, including the power to contract with the legislative bodies of neighboring municipalities to give or receive police and fire services.

The Cannon Township board approved two resolutions, as discussed earlier, that reflect the various public policy issues that would affect the township. The first resolution approved by the Cannon Township Board assessed the "Adverse Impacts on Cannon Township and Grattan Township" that the proposed manufactured housing development would cause to defendant Cannon Township. The township expressed: concern over traffic congestion (§ 1a); growth concerns because of the agricultural zoning in Grattan Township and the agricultural-residential zoning of Cannon Township (§§ 1b, 1c, 1e); educational funding issues (§ 1d); and sensitive watershed and environmental matters as well (§ 1f). Further, Cannon Township's first resolution, in meticulous detail, outlined the joint interests of the two townships and contained declarations stating the public purpose and township purpose in opposing the proposed development (§§ 2, 3, 4). Finally, the board approved the expenditure of township funds to help defray the costs of the ongoing legal controversy. The township has the power to pass ordinances affecting precisely these types of interests under MCL 41.181 regarding the public

health, safety, and general welfare of its citizens and property. Consistent with the ability to pass these ordinances is the ability to protect these concerns and to fund such expenditures as may be necessary to further the stated public purposes of any given township.

The trial court relied on the case of *Hays v City of Kalamazoo*, 316 Mich 443; 25 NW2d 787 (1947), in dismissing plaintiffs' complaint and in validating the ability of defendants to join with another township to meet a mutually shared problem. The plaintiff in *Hayes* was a taxpayer who brought suit against the city, its mayor, and its city commissioners, for the purpose of obtaining equitable relief. The plaintiff alleged that the defendant city improperly made annual contributions to the Michigan Municipal League (MML) using public funds derived from taxes and assessments. The plaintiff alleged that such expenditure was not authorized under the state Constitution or by any statute. The Court concluded that it could not state that the expenditure of public funds for the purpose of giving to the Legislature information regarding proposed or anticipated legislation affecting problems confronting cities and villages was against public policy. *Id.* at 466-467. The Court reasoned as follows:

> Applying the general principle suggested by the language of Justice COOLEY, in the light of the home-rule provisions of the Constitution and the city home-rule act, we think it must be said that the city of Kalamazoo had the right to join the Michigan Municipal League, to avail itself of the services rendered thereby, and to expend money out of public funds in payment therefor. The record fully justifies the conclusion that the welfare of the city was thereby served and, hence, that the purpose was a city public purpose. [*Id.* at 458.]

Here, Cannon Township's contribution of funds served a valid public purpose. Justice COOLEY, in *People ex rel Detroit & Howell R Co v Salem Twp Bd*, 20 Mich 452, 475 (1870), stated:

> I do not understand that the word *public*, when employed in reference to this power, is to be construed or applied in any narrow or illiberal sense, or in any sense which would preclude the Legislature from taking broad views of State interest, necessity or policy, or from giving those views effect by means of the public revenues. Necessity alone is not the test by which the limits of State authority in this direction are to be defined, but a wise statemanship must look beyond the expenditures which are absolutely needful to the continued existence of organized government, and embrace others which may tend to make that government subserve the general well-being of · society, and advance the present and prospective happiness and prosperity of the people. [Emphasis in original.]

In *Hays*, our Supreme Court upheld the expenditure of public funds to assist other cities' shared interests in public policy initiatives with the Michigan Legislature. *Hays* provides foundational case law supporting and buttressing Cannon Township's expenditure for a shared public policy initiative with Grattan Township.

Defendant Cannon Township's two resolutions demonstrated its thorough fact-finding and deliberative policy considerations. The actions of a municipal legislative body enjoy a presumption of constitutional validity. *Watnick v Detroit*, 365 Mich 600, 606; 113 NW2d 876 (1962). The courts are especially deferential toward legislative determinations of public purpose; "[f]or determination of what constitutes a public purpose involves considerations of economic and social philosophies and principles of political science and government. Such determinations should be made by the elected representatives of the people." *Gregory*

*Marina, Inc v Detroit,* 378 Mich 364, 394; 144 NW2d 503 (1966) (opinion by KAVANAGH, C.J.); *Horton v City of Kalamazoo,* 81 Mich App 78, 81; 264 NW2d 128 (1978).

We note that although the trial court incorrectly determined that Cannon Township's power was derived from MCL 41.2(3), we find that Cannon Township did have the legal authority to assist Grattan Township under MCL 42.2(1)(b). "A trial court's ruling may be upheld on appeal where the right result issued, albeit for the wrong reason." *Gleason v Dep't of Transportation,* 256 Mich App 1, 3; 662 NW2d 822 (2003). Therefore, we conclude that the trial court did not err in granting summary disposition in favor of defendants.

### B. ELECTOR APPROVAL

A finding that Cannon Township's expenditure was legal necessitates review of whether such an expenditure was required to be approved by the registered electors of the township under MCL 41.3, which provides:

> The inhabitants of a township shall have the power, by a vote of the registered electors of the township, to grant and vote sums of money, not exceeding amounts limited by law, that they consider necessary for defraying proper charges and expenses arising in the township. The township board or a township officer shall not create a debt or liability against the township, or issue a warrant, certificate, or order for the payment of money, unless the creation of the debt or liability or the payment of the money has been authorized by vote of the registered electors of the township or by law.

Plaintiffs argue that on the basis of the above statute, the Cannon Township board exceeded its authority by expending funds in aid of litigation in which it was not

a party and in the absence of authorization to do so by the vote of the registered electors of the township.

" 'The primary rule of statutory construction is to determine and effectuate the intent of the Legislature through reasonable construction in consideration of the purpose of the statute and the object sought to be accomplished.' " *Frankenmuth Mut Ins Co v Marlette Homes, Inc*, 456 Mich 511, 515; 573 NW2d 611 (1998) (citations omitted). Where the statute is clear and unambiguous, judicial construction is precluded. *Id.* The plain language of MCL 41.3 provides that the registered electors of the township shall vote to grant sums of money necessary for defraying proper charges and expenses arising in the township and that the township board shall not create a debt or liability unless the payment of the money has been authorized by vote of the registered electors or by law.

However, MCL 41.3 is not applicable to townships that have abolished the practice of holding an annual meeting, such as in Cannon Township. In these townships, the township boards have assumed all powers, pursuant to MCL 41.8(7), that could have been exercised by the registered electors at the annual meeting and, thus, are authorized to exercise all authority granted under MCL 41.3.

MCL 41.8 provides in relevant parts:

> (1) Except as otherwise provided in this section, an annual meeting of the electors of each township shall be held on the last Saturday in the last month of each fiscal year, at the time and place selected by the township board. However, the annual meeting may be held on an alternate date if the alternate date is approved by a majority of the township board and is in the last month of the township's fiscal year.

* * *

(4) The electors meeting at the place designated shall transact lawful business by majority vote.

(5) In a township other than a charter township, the township board, by resolution, may, or on the filing of petitions signed by a number of registered electors of the township equal to not less than 5% of the electors who voted for township supervisor at the immediately preceding township supervisor election of the township, shall, submit the question of the reestablishment of the annual meeting of the electors to the electors of the township at the next regular primary election or general election. The resolution or petitions shall be filed with the township clerk not less than 70 days before the election at which the question is submitted. If a majority of the electors of the township voting on the question votes to reestablish the annual meeting of the electors, the annual meeting of the electors is reestablished for that township, and the electors at the annual meeting shall reassume powers conferred by statute. Once the annual meeting has been reestablished by a vote of the people, the annual meeting may only be abolished by a resolution of the township board submitting the question of the abolition of the annual meeting to the electors of the township at the next regular primary or general election.

(6) Except as provided in subsection (5), a township is not required to hold an annual meeting of the electors of the township unless the township board, by resolution, elects to hold an annual meeting.

(7) In a township that does not hold an annual meeting, powers that could have been exercised by the electors at an annual meeting may be exercised by the township board.

While the above statute provides that an annual meeting of the electors of the township shall be held on the last Saturday in the last month of each fiscal year, it also provides that when a township does not hold an annual meeting, powers that could have been exercised by the electors may be exercised by the township board. Here, an annual meeting was not held, thus the powers

that could have been exercised by the electors were properly exercised by the Cannon Township board.

In short, this particular type of expenditure was authorized by law and the registered electors of Cannon Township did not have the right to vote on the disbursement.

Affirmed.

NEFF, P.J., concurred.

SMOLENSKI, J. (*dissenting*). Because I find no constitutional or statutory authority for Cannon Township to expend funds to assist a neighboring township with a legal dispute, I respectfully dissent.

Townships have no inherent powers; rather, they possess only those limited powers conferred on them by the Legislature or by the Michigan Constitution. *Howell Twp v Rooto Corp*, 258 Mich App 470, 475; 670 NW2d 713 (2003). The powers granted to townships by the Constitution and by law only include those fairly implied and not prohibited by the Constitution. *Id.* at 475-476, citing Const 1963, art 7, § 34. Thus, for the disbursement of Cannon Township funds to Grattan Township to be a valid expenditure, there must be a statute or constitutional provision that expressly or impliedly authorizes that type of expenditure. *Hanselman v Wayne Co Concealed Weapon Licensing Bd*, 419 Mich 168, 187; 351 NW2d 544 (1984).

The majority finds authority for Cannon Township's contract with Grattan Township in MCL 41.2(1)(b), which provides that townships have the power "[t]o make contracts necessary and convenient for the exercise of their corporate powers." While this statute does grant townships the power to enter into contracts, it also limits that grant to contracts that are "necessary

and convenient for the exercise of their corporate powers." MCL 41.2(1)(b). Consequently, the exercise of the contract power under MCL 41.2(1)(b) must be predicated upon a separate and distinct grant of power.

Cannon Township has not and cannot demonstrate that the contract with Grattan Township was based on an underlying separate and distinct grant of power. Nor can Cannon Township rely on a general police power, as did the city of Kalamazoo in *Hays v City of Kalamazoo*, 316 Mich 443, 455-456; 25 NW2d 787 (1947). Cities have inherent police power pursuant to Const 1963, art 7, § 22.[1] *Detroit Edison Co v Richmond Twp*, 150 Mich App 40, 45; 388 NW2d 296 (1986). Townships, on the other hand, "have no police power of their own, but have only those powers and immunities which are provided by law." *Id.* at 47-48, citing Const 1963, art 7, § 17 (a township is "a body corporate with powers and immunities *provided by law*") (emphasis added). Const 1963, art 7, § 34[2] does not grant townships a general police power. Rather, it is a rule of construction mandating that the powers granted to townships in statutes and constitutional provisions be liberally construed. It

---

[1] Const 1963, art 7, § 22 provides:

Under general laws the electors of each city and village shall have the power and authority to frame, adopt and amend its charter, and to amend an existing charter of the city or village heretofore granted or enacted by the legislature for the government of the city or village. *Each such city and village shall have power to adopt resolutions and ordinances relating to its municipal concerns, property and government, subject to the constitution and law. No enumeration of powers granted to cities and villages in this constitution shall limit or restrict the general grant of authority conferred by this section.* [Emphasis added.]

[2] Const 1963, art 7, § 34 provides, "The provisions of this constitution and law concerning counties, townships, cities and villages shall be liberally construed in their favor. Powers granted to counties and townships by this constitution and by law shall include those fairly implied and not prohibited by this constitution."

does not expand a township's powers.[3] Furthermore, while townships are granted a limited police power under MCL 41.181 regarding the public health, safety, and general welfare of its citizens and property, a township's power under this statute is limited to adopting ordinances and regulations.[4] MCL 41.181(1). It does not authorize a township to expend funds in general.[5] The purposes for which a township board may appropriate money or expend funds are governed by MCL 41.110c, which states:

> The township board may appropriate money or expend funds for all of the following purposes:
>
> (a) To advertise the agricultural, industrial, commercial, educational, or recreational advantages of the state, county, or township.
>
> (b) To collect, prepare, or maintain an exhibition of the products and industries of the township at any domestic or foreign exposition to encourage immigration and increase the trade in the products of this state or the township.
>
> (c) To advertise this state or any portion of this state to tourists and resorters.

---

[3] The convention comment to this provision notes that cities and villages already enjoyed broad construction of their powers and that "it is the intention here to extend to counties and townships *within the powers granted to them* equivalent latitude in the interpretation of the constitution and statutes." 2 Official Record, Constitutional Convention 1961, p 3395 (emphasis added).

[4] Under MCL 41.181(1), a township may adopt ordinances concerning such matters as "fire protection, licensing or use of bicycles, traffic, parking of vehicles, sidewalk maintenance and repairs, the licensing of business establishments, the licensing and regulating of public amusements, and the regulation or prohibition of public nudity . . . ." Ordinances may also apply to streets, roads, highways, or other designated areas of the township as determined by the township board. MCL 41.181(2).

[5] MCL 41.181(1) only authorizes a township to appropriate funds for the establishment and maintenance of a township police department and for services from the county sheriff.

(d) To maintain and circulate a publication to disseminate information regarding township improvements, activities, and functions.

Construing these purposes liberally, none can fairly be construed to encompass providing funds to cover another township's legal costs.

Accordingly, I would reverse the trial court's grant of summary disposition in favor of defendants and hold that summary disposition be granted in favor of plaintiffs pursuant to MCR 2.116(I)(2) and 7.216(A)(7).