# STATE OF MICHIGAN

# COURT OF APPEALS

CLAY W. LONG,

        Plaintiff/Counter Defendant-
        Appellant,

v

HARBOR POINT ASSOCIATION,

        Defendant/Counter Plaintiff/Third
        Party Plaintiff-Appellee,

and

LYNSEY LONG,[1]

        Third Party Defendant.

UNPUBLISHED
October 15, 2015

No. 322327
Emmett Circuit Court
LC No. 13-103876-CH

Before: MARKEY, P.J., and STEPHENS and RIORDAN, JJ.

PER CURIAM.

Plaintiff sought a declaratory judgment that he was under no contractual or other obligation to pay defendant an assessment and that defendant was required to grant him easements for utilities and access to his property. The trial court granted defendant summary disposition finding that plaintiff was required to pay the assessment and that this finding required dismissal of plaintiff's remaining claims seeking easements over defendant's property. Plaintiff appeals by right. We affirm.

## I. FACTUAL BACKGROUND

Defendant is an association incorporated under the Summer Resort Association Act, MCL 455.1 *et seq.* Defendant's members are essentially all owners of cottages that are located on a pointed peninsula with Little Traverse Harbor to the North and Little Traverse Bay to the

---

[1] The trial court dismissed defendant's counterclaim against plaintiff's wife, Lynsey Long, finding that her interest in the property at issue at the time of the suit was merely an "inchoate dower interest." Long is not a party to this appeal.

South. Defendant Association owns all the land on the peninsula with the exception of a small plot of land in the northwest corner which is known as the "ice lots." The ice lots are a plot where the town kept its ice house. When the ice house was abandoned, defendant chose not to purchase the ice lots. Thus, the ice lots are surrounded on three sides by land owned by defendant and on the fourth side by Little Traverse Harbor. Plaintiff owns a portion of the ice lots and has a cottage on his property.

Defendant charges each of its members an assessment to fund such things as water line maintenance, sewer maintenance, security, fire protection, snowplowing, etc. Additionally, it funds upkeep of defendant's common areas, such as parks, a golf course, and a horse and buggy transportation system. In 1916, defendant passed a resolution that stated that ice lot owners would be provided all of the amenities enjoyed by regular members so long as they paid the assessment fee. Ice lot owners, however, are not members of defendant Association, so they are not entitled to vote in defendant's elections or serve as officers or directors of defendant Association.

Plaintiff acquired his property in 1992. His father originally gave the property to plaintiff and his sister as tenants in common. In 1994, plaintiff acquired his sister's one-half interest in the property. Plaintiff's father acquired the property via a probate deed that granted him the property

> [s]ubject to the following two covenants which shall be binding on second party, his executors, administrators, heirs and assigns:
>
> *   *   *
>
> (2)    Ownership of the property above described shall never be transferred, except with prior written approval of the Directors of Harbor Point Association, of Harbor Springs, Michigan.
>
> Subject further to general taxes not yet due and payable; special taxes and assessments not yet due and payable; covenants, conditions and restrictions of record including, but not limited to the rights of the Association in the property; zoning and building laws and ordinances; public utility easements; public roads and highways; public and private easements; drainage ditches; feeders and latterals; and Association rules, regulations and by-laws, to the extent applicable.

From the time plaintiff acquired his ice lot property in 1992 until 2002, he paid the assessment to defendant without protest. In 2002, plaintiff requested that he be exempted from a portion of the assessment that was used to fund the horse and buggy system because plaintiff did not use that service. But in the letter, plaintiff stated that he was aware of "the need for everyone to fund common elements." The record is unclear regarding whether plaintiff was granted this exception. In 2006 and 2007, plaintiff paid the assessment but did so under protest. It is also not clear what occurred in 2008 and 2009, but in 2010, plaintiff refused to pay the assessment. Defendant filed suit against plaintiff in district court in 2010. The district court held that a contract implied in fact existed between the parties whereby defendant would provide services to

plaintiff and plaintiff would pay for those services in the form of the assessment fee. Specifically, the district court held:

> [Plaintiff] purchased [his] property understanding that services were going to be rendered to the benefit of [his] property by Harbor Point Association, and by paying the dues, that [he] had the authority to use all of the services of Harbor Point Association.

> These facts established that there was in fact an implied contract and understanding by [plaintiff] when [he] acquired title that [he] would be receiving the benefits of the services to be provided to [him] by, and to use the property of, Harbor Point Association, and would pay dues to Harbor Point Association.

> In one of his pleadings in the 2010 litigation, plaintiff asserted:

> [Plaintiff (and his wife)] do hereby notify the Association that they terminate any contracts, express or implied, that they may have ever had between themselves and the Association to pay assessments or similar charges or dues that the Association may attempt to impose upon them.

Plaintiff thereafter filed this action seeking a declaratory judgment that due to this renunciation, no implied in fact contract continued to exist between himself and defendant. Plaintiff also asserted claims for easements for both access and utilities over defendant's property.

The trial court found that notwithstanding the declaration, plaintiff's property continued to receive the benefit of services from defendant. The trial court stated that plaintiff's position was not an attempt to terminate the contract but to unilaterally modify it. The trial court found that what defendant offered was a "package of services" that are not separately available; consequently, the court granted defendant summary disposition on both its counterclaim and on plaintiff's claim for declaratory relief. Having decided that an implied contract existed, the trial court found it was unnecessary to address plaintiff's claims of easements for access and utilities.

## II. STANDARD OF REVIEW

This Court "reviews the grant or denial of summary disposition de novo to determine if the moving party is entitled to judgment as a matter of law." *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999); MCR 2.116(C)(10).

## III. ANALYSIS

Preliminarily, defendant argues that res judicata precludes plaintiff from contesting whether a contract implied in fact exists since that issue was determined by the district court in the 2010 litigation between the parties. Although the trial court's opinion in this case did not specifically address the issue of res judicata, defendant can raise it as an alternative reason for affirming the trial court's decision. See *Middlebrooks v Wayne Co*, 446 Mich 151, 166 n 41; 521 NW2d 774 (1994) (noting a cross appeal is not necessary to assert an alternative basis to affirm the lower court); and *Smith v Foerster-Bolser Constr, Inc*, 269 Mich App 424, 427; 711 NW2d

-3-

421 (2006) (holding that this Court "may overlook preservation requirements if . . . the issue involves a question of law and the facts necessary for its resolution have been presented"). Moreover, this Court will affirm a trial court when it reaches the correct result even if for the wrong reason. *Hess v Cannon Twp*, 265 Mich App 582, 596; 696 NW2d 742 (2005).

"Res judicata bars a subsequent action between the same parties when the evidence or essential facts are identical." *Sewell v Clean Cut Mgmt*, 463 Mich 569, 575; 621 NW2d 222 (2001). In Michigan, the doctrine of res judicata bars claims that have been already litigated, but also bars "every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Id.* "The doctrine of res judicata applies not only to facts previously litigated, but also to points of law necessarily adjudicated in determining and deciding the subject matter of the litigation." *Jones v State Farm Mut Auto Ins Co*, 202 Mich App 393, 401; 509 NW2d 829 (1993), modified on other grounds *Patterson v Kleiman*, 447 Mich 429; 526 NW2d 879 (1994). The doctrine precludes litigation of a second action when "(1) the first action was decided on the merits, (2) the matter contested in the second action was or could have been resolved in the first, and (3) both actions involve the same parties or their privies." *Dart v Dart*, 460 Mich 573, 586; 597 NW2d 82 (1999).

The previous litigation clearly concerned the same parties and was decided on the merits. The issue is whether the matter contested in this action was or could have been resolved in the prior litigation. Plaintiff argues that the present matter is not the same as that contested in the 2010 litigation because the 2010 case only involved whether a contract between the parties existed in 2010 whereby defendant would provide services and plaintiff would pay an assessment fee. Plaintiff argues that the present case concerns whether a contract existed for 2011 and 2012 and is thus a different matter that could not have been asserted in the 2010 litigation. Although plaintiff assumes that the contract at issue in the 2010 litigation was subject to renewal or cancellation by plaintiff each year, our reading of the district court's opinion suggests otherwise. The district court's final judgment in 2010 clearly found that an implied in fact contract existed "when [Long] acquired title." Regardless of defendant's 1916 resolution, it appears clear from both the 1978 probate deed and the parties' pattern of practice for the entire time plaintiff owned the property, that paying the assessment was not optional. We conclude that the district court in the 2010 litigation found that a contract implied in fact was formed when defendant acquired title, the duration of which was to last until plaintiff no longer owned the ice lot property. Therefore, we conclude that this action involves the same issue that was previously raised and decided in the 2010 litigation. Accordingly, plaintiff is barred by res judicata from re-litigating the issue in the present action. Although the trial court did not base its decision on res judicata, we conclude that it reached the right result in granting defendant's motion for summary disposition. *Hess*, 265 Mich App at 596.

We affirm.

/s/ Jane E. Markey
/s/ Cynthia Diane Stephens
/s/ Michael J. Riordan