# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* TYSON ESTATE.

| | |
|---|---|
| ROBERT H. TYSON, Individually and as Personal Representative of the Estate of JULIA ELLEN TYSON, and JAMES H. TYSON, | UNPUBLISHED<br>December 22, 2015 |
| Appellees, | |
| v | No. 322844<br>Oakland Probate Court |
| BARBARA S. GRAY and PATRICIA TYSON, | LC No. 2012-344478-DE |
| Appellants. | |

Before: SAWYER, P.J., and BECKERING and BOONSTRA, JJ.

PER CURIAM.

Appellants Barbara S. Gray (Barbara) and Patricia Tyson (Patricia) appeal as of right the trial court's order enforcing the settlement agreement between Barbara and Patricia and their brothers, Robert H. Tyson (Robert) and James H. Tyson (James), dismissing all pending objections and petition, and closing the estate of Julia Ellen Tyson (decedent). We affirm.

Decedent, the mother of the parties, passed away on July 21, 2011. At the time of her death, decedent was the settlor of a trust which owned stock in HFT Realty Company, Inc., an entity that owned a commercial real estate investment in Indiana. The stock was distributed equally to the children upon decedent's death and Robert subsequently agreed to purchase the stock from Patricia, Barbara, and James for $40,000 each. Decedent also owned various personal property. Decedent and Robert owned as joint tenants with rights of survivorship two bank accounts and HRC Hotels Investment, a limited liability investment company.

Shortly after decedent's death, disagreements regarding how the estate should be distributed arose, with Robert and James on one side and Barbara and Patricia on the other. Robert, as personal representative of decedent's estate, discovered a series of loans given by decedent to Patricia as well as a 2009 promissory note executed by Patricia in favor of decedent. Patricia agreed to execute a new promissory note in 2011 in favor of the estate in the amount of $43,700. Robert also later discovered another promissory note executed by Patricia in favor of HFT Realty in 2003. In his capacity as personal representative, Robert brought suit to collect on the 2003 promissory note in a separate action in Oakland Circuit Court.

-1-

Despite these various disagreements, the parties entered into an agreement on the record on January 30, 2014, that was meant to resolve all of the claims surrounding decedent's estate. The parties agreed that Robert would pay James and Barbara $45,000 each for their HFT Realty stock. In consideration for forgiving the 2011 promissory note, Robert would not owe Patricia anything for her shares in HFT Realty. The parties also agreed that Patricia and Barbara were to receive decedent's personal property. In regards to HRC Hotels, LLC, the parties agreed that if it was valued at $55,000 or less at the time of decedent's death, Robert would retain sole ownership. If it was worth anything over $55,000, the overage would be split equally between the four children. Finally, the parties agreed that Robert was to dismiss the suit to collect on Patricia's promissory note to HFT Realty in Oakland Circuit Court.

Appellants argue that the trial court erred in finding that a settlement agreement existed when it did not contain all material elements to resolve the case. We disagree.

"The existence and interpretation of a contract are questions of law reviewed de novo." *Kloian v Domino's Pizza LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006) (citation omitted). "An agreement to settle a pending lawsuit is a contract and is to be governed by the legal principles applicable to the construction and interpretation of contracts." *Walbridge Aldinger Co v Walcon Corp*, 207 Mich App 566, 571; 525 NW2d 489 (1994). "However, this Court will not enforce a settlement agreement that fulfills the requirements of contract principles if that agreement does not also satisfy the requirements of the court rule." *Mich Mut Ins Co v Ind Ins Co*, 247 Mich App 480, 484-485; 637 NW2d 232 (2001) (citations and quotation marks omitted). MCR 2.507(G) states that an agreement between opposing litigants is not binding "unless it was made in open court, or unless evidence of the agreement is in writing, subscribed by the party against whom the agreement is offered or by that party's attorney."

It is well-settled in Michigan that the essential elements of a valid contract are as follows: "(1) parties competent to contract, (2) a proper subject matter, (3) a legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *Hess v Cannon Twp*, 265 Mich App 582, 592; 696 NW2d 742 (2005) (citation omitted). In order to form a valid contract, there must be mutual assent or a meeting of the minds on all the essential terms. *Kloian v Domino's Pizza LLC*, 273 Mich App 449, 453; 733 NW2d 766 (2006). An objective standard is used to determine if there was a meeting of the minds, looking to parties' express words and acts, not their subjective states of mind. *Stanton v Dachille*, 186 Mich App 247, 256; 463 NW2d 479 (1990).

On appeal, Barbara and Patricia do not contest the competency of any party, the propriety of the subject-matter discussed on the record on January 30, 2014[1], or the existence or adequacy of consideration. Their primary objection is that there was no mutual assent between the parties on January 30, 2014, because of later disputes that arose regarding certain terms of the settlement agreement. Barbara and Patricia identify five separate terms of the settlement that were not expressly agreed to by both parties. They argue that these terms were material and the parties'

---

[1] The settlement agreement was completed in the presence of a court reporter at the office of Raymond C. Barry, attorney for Robert in his capacity as personal representative.

failure to resolve these issues on January 30, 2014, demonstrates that there was no meeting of the minds on all essential terms. Each term will be addressed individually.

Patricia and Barbara first argue that there was no meeting of the minds on the value of HRC Hotels, LLC. As stated above, Robert and decedent owned HRC Hotels, LLC as joint tenants with rights of survivorship. On January 30, 2014, the parties stated on the record that if HRC Hotels, LLC was worth $55,000 or less on July 21, 2011, the date of decedent's death, then Robert would maintain sole ownership. However, if it was worth over $55,000, the overage would be paid out in equal shares to the four siblings. Patricia and Barbara argue that the parties never agreed on the material term of how exactly to value HRC Hotels, LLC or how any discrepancies regarding valuation would be resolved. A review of the record from January 30, 2014, shows that Patricia and Barbara are mistaken. On the record, counsel for Patricia and Barbara clearly stated, "Robert Tyson to contact HRC, LLC I believe it is to get a current valuation of the investment." There is nothing ambiguous about how the valuation of this investment was to be calculated. The parties agreed that Robert was simply to contact HRC Hotels, LLC to receive a valuation. While Patricia and Barbara were not pleased with the valuation of $45,500 that was received, this fails to demonstrate that there was no meeting of the minds.

Patricia and Barbara next argue that there was no meeting of the minds regarding the value of the HFT Realty stock that Robert was to purchase from his siblings. Like with the HRC Hotels, LLC valuation, a review of the record from January 30, 2014, demonstrates that there was no confusion regarding how this was to be determined. Counsel for Patricia and Barbara stated that "No monies shall be paid by Patricia Tyson or paid to Patricia Tyson relative to the post-death estate. Robert Tyson shall pay Barbara Gray and James Tyson each the sum of $45,000. The sum to Barbara to be paid within seven days. The sum to Jim within 10 years." Patricia and Barbara now state that "the basis of the value is questionable at best." Despite any misgivings they may have regarding the stock purchase agreements, they fail to present evidence to demonstrate that there was no mutual assent or meeting of the minds regarding their sale of HFT Realty stock to Robert.

Patricia and Barbara also argue that there was no agreement regarding the manner in which they were to receive decedent's personal property and how to verify that the property was delivered. The record indicates that the parties agreed that Patricia and Barbara were to receive "all remaining personal belongings and knickknacks of Julia Tyson." The parties stated that this included paintings, pictures, books, and quarters. Patricia and Barbara argue that delivery and verification of the personal property were material terms and failure to include them is grounds for voiding the agreement. While the record is missing any agreement regarding delivery and verification, the Michigan Supreme Court has held, "We must not jump too readily to the conclusion that a contract has not been made from the fact of apparent incompleteness. . . . A transaction is complete when the parties mean it to be complete. It is a mere matter of interpretation of their expressions to each other, a question of fact." *Opdyke Inventory Co v Norris Grain Co*, 413 Mich 354, 360; 320 NW2d 836 (1982) (citing 1 Corbin, Contracts, § 29, pp 86-88). At the end of the January 30, 2014 hearing, Patricia was asked by her attorney if she understood that if she went to trial, she could receive more or less than she agreed to settle for. Patricia replied that she did understand the consequences of settling. Patricia's attorney then asked, "And are you satisfied with the settlement as placed on the record?" to which Patricia

replied "yes." The record also indicates that Patricia was authorized to enter into a settlement agreement on behalf of Barbara. In light of Patricia's response, as well as the detailed list of personal property that the parties discussed on the record, the trial court did not err in concluding that the parties meant the agreement to be complete regarding decedent's personal property.

Patricia and Barbara next argue that the parties never agreed on how Patricia and Barbara were to be reimbursed from the estate for certain medical and other expenses. Robert and James argue that Patricia and Barbara did not preserve this issue for appeal because it was not raised in the trial court. However, at the hearing regarding Robert and James's Motion to Enforce Settlement Agreement, counsel for Patricia and Barbara specifically noted that there were unresolved issues, including that "There was a spreadsheet where one of the Tysons asked for a reimbursement of expenses." Therefore, this issue was properly preserved for appeal.

However, Robert and James correctly note that the settlement agreement included a release of all remaining claims by all parties. Counsel for Patricia and Barbara stated on the record that "We have reached a settlement that disposes of all claims with the following terms." Therefore, while Patricia and Barbara may have had legitimate claims for reimbursement of medical and other expenses, the record from January 30, 2014, is clear that as part of this agreement, the sisters agreed to release these claims in exchange for various other benefits. It should be noted that Barbara received an additional $5,000 for her shares in HFT Realty and Patricia's liability on the promissory note was released as part of the settlement. This language releasing all claims also addresses Patricia and Barbara's claims regarding the validity of the 2011 promissory note as well as furniture, appliances, and bank accounts that Robert received as part of the settlement.

Finally, Patricia and Barbara argue that the settlement agreement does not address who was responsible for the annual fees associated with the timeshare in Nassau that Patricia and Barbara were supposed to receive as part of the settlement. They argue that this was a material term and that its absence renders the agreement unenforceable. However, a review of Patricia and Barbara's Answer to Robert's Motion to Enforce Settlement Agreement, as well as the June 11, 2014 hearing on that motion, reveals that Patricia and Barbara failed to raise this issue before the trial court. It is well-settled that "a litigant must preserve an issue for appellate review by raising it in the trial court." *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008). Therefore, any issue regarding fees associated with decedent's timeshare was not preserved for appeal. In any event, a review of the record shows that counsel for Patricia and Barbara stated that in receiving the timeshare in Nassau, "Any fees or expenses incurred in the transfer are the responsibility of Patricia and Barbara."

While the settlement agreement must also satisfy the requirements of MCR 2.507(G) in order to be enforceable, Patricia and Barbara did not contest this issue in the trial court or on appeal. Therefore, the Court need not address it. *Id*.

Affirmed.

/s/ David H. Sawyer
/s/ Jane M. Beckering
/s/ Mark T. Boonstra

-4-