*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TOWN CENTERS DEVELOPMENT CO., INC.,

Plaintiff/Counterdefendant-
Appellant,

v

PND INVESTMENTS, LLC, WOLVERINE
BUILDING COMPANY, LLC, MIDTOWN
VILLAGE LOFTS, LLC, and HORIZON BANK,
Successor by Merger with WOLVERINE BANK,

Defendants-Appellees,

and

MBANK,

Defendant/Counterplaintiff/Third-
Party Plaintiff-Appellee,

and

VINCENT DELORENZO and ANGELA
TINERVIA,

Third-Party Defendants.

UNPUBLISHED
July 30, 2019

No. 343247
Macomb Circuit Court
LC No. 2017-003542-CB

Before: GADOLA, P.J., and SERVITTO and REDFORD, JJ.

PER CURIAM.

Plaintiff appeals as of right the Macomb Circuit Court's grant of summary disposition in favor of all defendants on the ground that collateral estoppel barred plaintiff's claims. We affirm.

## I. BACKGROUND

Plaintiff, Town Centers Development Company, Inc. (TCD), sued defendants for trespass, nuisance, slander of title, and to quiet title to a parcel of property located in Shelby Township, Michigan to which TCD claimed title under a quitclaim deed. Defendants, PND Investments, LLC (PND), Wolverine Building Company, LLC (Wolverine Building), Midtown Village Lofts, LLC (Midtown Village), Wolverine Bank (now succeeded by merger with Horizon Bank), and mBank, all moved for summary disposition on the ground that collateral estoppel barred TCD's claims because the United States Bankruptcy Court for the Eastern District of Michigan previously ruled that TCD did not own or have a viable interest in the subject property,[1] the United States District Court for the Eastern District of Michigan upheld the bankruptcy court's ruling,[2] and the United States Court of Appeals for the Sixth Circuit affirmed the district court's ruling.[3]

TCD once owned the subject property and in 2006 it granted a mortgage on the property to mBank which later initiated foreclosure proceedings. In May 2009, TCD executed a warranty deed in lieu of foreclosure and conveyed the property to mBank. At that time, TCD warranted that it owned the property and held title free and clear of any undisclosed liens and encumbrances. In April 2013, mBank conveyed its interest in the property to PND.

In July 2008, because of unpaid labor and supplies for improvements on "Building 53" of the subject property, a 53-unit condominium development,[4] Fox Brothers Company (Fox Brothers) filed in Macomb Circuit Court a construction lien foreclosure action against TCD, Town Center Flats, LLC (TCF), and Vincent DiLorenzo, the manager and principal of TCD and TCF.[5] Fox Brothers later added Keybank as a party because it had a recorded mortgage interest on the property that preceded its construction lien. The circuit court entered a judgment of foreclosure in favor of Fox Brothers on July 27, 2009, and its order subordinated mortgage interests recorded after Fox Brothers commenced its construction lien action to Fox Brothers' lien. Keybank's priority mortgage lien was not affected by the judgment. The court ordered that the property be sold at public auction or by the county sheriff or clerk. A sheriff's sale occurred and on October 16, 2009, the Macomb County Sheriff executed a sheriff's deed on the property in favor of Fox Brothers and the county clerk issued a report of the sheriff's sale on Building 53 for $32,244.39, the amount of Fox Brothers' lien. On November 2, 2009, the court confirmed

---

[1] *In re Town Center Flats, LLC*, unpublished opinion of the United States Bankruptcy Court for the Eastern District of Michigan issued September 28, 2016 (Case No. 15-41307).

[2] *Town Center Flats, LLC, v ECP Commercial II, LLC (In re Town Center Flats)*, unpublished opinion of the United States District Court for the Eastern District of Michigan issued April 11, 2017 (Civil Action No. 16-CV-13911).

[3] *Town Center Flats, LLC, v ECP Commercial II, LLC (In re Town Center Flats)*, 727 Fed Appx 114 (CA 6 2018), cert den 139 S Ct 144 (2018).

[4] The record indicates that Building 53 had an estimated value of at least $1,800,000.

[5] *Livonia Holdings v Helser*, Case No. 08-3298.

the sale and set a 30-day redemption deadline of December 2, 2009. On December 4, 2009, DiLorenzo paid Fox Brothers approximately $32,500 in checks and cash in exchange for the release of all lien claims. A quitclaim deed from Fox Brothers to TCD was executed which the county register of deeds recorded on December 16, 2009.[6]

TCD later filed for bankruptcy protection. TCD, however, did not list the subject property as an asset in its bankruptcy schedules. During January 2016, the bankruptcy court confirmed TCD's Chapter 11 plan which did not include the subject property identified in the quitclaim deed from Fox Brothers to TCD. In June 2016 the bankruptcy court closed TCD's bankruptcy case.

TCD's affiliated company, TCF, also filed for bankruptcy protection during January 2015. In 2016, the bankruptcy court conducted an evidentiary hearing to determine the ownership of the subject property. TCD was represented by counsel and participated in the proceedings. The bankruptcy court found, based on evidence consisting of (1) submissions to the Macomb Circuit Court during Fox Brothers' construction lien action, (2) Fox Brothers' counsel's explanation made at a hearing conducted by the circuit court on August 28, 2012, regarding Fox Brothers and TCD, TCF and DiLorenzo's agreement to extend the redemption period to December 4, 2009, (3) the circuit court's indication at that hearing that the approximately $32,500 payment had been received in full upon redemption of the property, (4) Fox Brothers' counsel's testimony at the bankruptcy court's evidentiary hearing, and (5) DiLorenzo's testimony during the bankruptcy court's evidentiary hearing, that the parties extended the redemption period to December 4, 2009 so that the redemption amount could be obtained by DiLorenzo and paid to redeem the subject property.

The bankruptcy court concluded that a preponderance of the evidence established that DiLorenzo's payments to Fox Brothers on December 4, 2009, redeemed the property. The bankruptcy court ruled that, because the property had been redeemed, the quitclaim deed served to memorialize the redemption and did not operate to transfer the property from Fox Brothers to TCD. Further, the redemption extinguished Fox Brothers' sheriff's deed. The bankruptcy court explained that the property remained subject to a first priority mortgage interest held by Keybank and that Fox Brothers' lien interest was junior to Keybank's mortgage lien pursuant to MCL 570.1119, because Keybank perfected its mortgage interest before the first physical improvement made on the property. The redemption of the property after the parties extended the redemption period voided the sheriff's deed, and thus, the bankruptcy court held that Fox Brothers did not have any right, title, or interest in the property that it could convey to TCD. Accordingly, TCD did not own the subject property by a conveyance via the purported quitclaim deed.

In September 2017, TCD filed the present action alleging that it held sole ownership of the property pursuant to the 2009 quitclaim deed from Fox Brothers. It alleged that PND, Midtown Village, and Wolverine Building trespassed on the property and acted inconsistently with TCD's interest in the subject property. TCD alleged that mBank's conveyance of the

---

[6] TCD contends that this transaction did not constitute redemption of the property, but rather a sale of the property.

property to PND slandered TCD's title. Defendants moved for summary disposition on the basis of collateral estoppel, arguing that the bankruptcy court's previous ruling barred TCD from asserting ownership of the property. Defendants also argued that judicial estoppel and the after-acquired title doctrines were alternative bases for granting judgment in their favor. The trial court agreed that the bankruptcy court's previous ruling collaterally estopped TCD from asserting title to the property. Accordingly, the court granted defendants' motions on this basis and declined to consider defendants' alternative arguments.

## II. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Spiek v Dep't of Transp,* 456 Mich 331, 337; 572 NW2d 201 (1998). In considering a motion for summary disposition under MCR 2.116(C)(7), on the ground that collateral estoppel barred the action, the trial court may consider affidavits, pleadings, and other documentary evidence, construing them in the light most favorable to the nonmoving party. *Alcona Co v Wolverine Envtl Prod, Inc,* 233 Mich App 238, 246; 590 NW2d 586 (1998). "Whether a party is collaterally estopped from disputing an issue addressed or admitted in a prior proceeding is a legal question," which is also reviewed de novo. *Horn v Dep't of Corrections,* 216 Mich App 58, 62; 548 NW2d 660 (1996).

## III. ANALYSIS

TCD argues that the trial court erred by granting defendants' motions for summary disposition on the ground that collateral estoppel barred its claims. We disagree.

Collateral estoppel, otherwise known as issue preclusion, bars relitigation of an issue in a later, different action, between the same parties or their privies, if the previous action resulted in a valid final judgment and the issue was actually and necessarily determined in that action. *Ditmore v Michalik,* 244 Mich App 569, 577; 625 NW2d 462 (2001); *Horn,* 216 Mich App at 62. Collateral estoppel requires that:

> (1) a question of fact essential to the judgment was actually litigated and determined by a valid and final judgment, (2) the same parties had a full and fair opportunity to litigate the issue, and (3) there was mutuality of estoppel. [*Estes v Titus,* 481 Mich 573, 585; 751 NW2d 493 (2008).]

Mutuality of estoppel, however, is not required where the doctrine is used defensively as in this case. *Monat v State Farm Ins Co,* 469 Mich 679, 691-692; 677 NW2d 843 (2004). For collateral estoppel to apply, the ultimate issue in the second action must be the same as that in the first proceeding. *Detroit v Qualls,* 434 Mich 340, 357; 454 NW2d 374 (1990). In *Bd of Co Rd Comm'rs v Schultz,* 205 Mich App 371, 376-377; 521 NW2d 847 (1994) (citations omitted), this Court clarified:

> The issues must be identical, and not merely similar, and the ultimate issues must have been both actually and necessarily litigated. To be necessarily determined in the first action, the issue must have been essential to the resulting judgment; a finding upon which the judgment did not depend cannot support collateral estoppel.

-4-

In *Phinisee v Rogers,* 229 Mich App 547, 553-554; 582 NW2d 852 (1998), this Court discussed the concept of "privity" for purposes of applying collateral estoppel:

> In *Sloan v Madison Heights*, 425 Mich 288, 295-296; 389 NW2d 418 (1986), our Supreme Court defined "privity" as follows: "In its broadest sense, privity has been defined as 'mutual or successive relationships to the same right of property, or such an identification of interest of one person with another as to represent the same legal right.'" (Citation omitted). Black's Law Dictionary (6th ed), p 1199, defines privity as
>
> > mutual or successive relationships to the same right of property, or such an identification of interest of one person with another as to represent the same legal right. . . . [It] signifies that [the] relationship between two or more persons is such that a judgment involving one of them may justly be conclusive upon [the] other, although [the] other was not a party to lawsuit.
>
> Privity between a party and a non-party requires both a substantial identity of interests and a 'working or functional relationship in which the interests of the non-party are presented and protected by the party in the litigation. [Quotation marks, alteration, and citations omitted.]

In this case, TCD based its ownership claim on the December 4, 2009 quitclaim deed from Fox Brothers. The trial court properly found that the issue whether TCD acquired title to the property via that quitclaim deed had been actually litigated and conclusively decided by a final judgment in the previous bankruptcy proceeding in which TCD was represented by counsel and had an opportunity to fully participate. The record in this case supports the trial court's decision. Therefore, collateral estoppel barred TCD from relitigating the issue of ownership of the subject property. Accordingly, the trial court did not err by granting defendants summary disposition.

TCD does not dispute that the ownership issue was fully litigated and decided by the bankruptcy court, but instead argues that the trial court should not have given the bankruptcy court's decision collateral estoppel effect because TCD contends that an inconsistent ruling in another case exists. Preliminarily, we note that TCD did not preserve this argument by raising it in the trial court. Therefore, we review this issue only for plain error affecting TCD's substantial rights. *Demski v Petlick*, 309 Mich App 404, 426-427; 873 NW2d 596 (2015). We find no merit to TCD's argument that an inconsistent ruling was made in another case.

TCD relies on *Town Ctr Flats, LLC v Shelby Twp*, LC No. 2013-000989-CK, in which TCD's affiliate, TCF, filed an action for injunctive relief and damages against Shelby Township because the township refused to enforce a deed restriction. The circuit court dismissed that action concluding that the defendant township was not a proper party to the action. TCF appealed that decision but this Court affirmed in *Town Ctr Flats, LLC v Shelby Twp*, unpublished per curiam opinion of the Court of Appeals, issued October 16, 2014 (Docket No. 316507). In *Town Ctr Flats*, this Court summarized the relevant facts and legal issue in that case as follows:

On March 12, 2013 plaintiff filed this action seeking injunctive relief and damages, alleging that defendant refused to enforce a deed restriction pertaining to property for which its owner, Redwood Acquisition, LLC, sought to construct a planned unit development. Plaintiff alleged that defendant's failure to act constituted a discriminatory application of the law and resulted in the inverse condemnation of plaintiff's adjacent property. Plaintiff filed a motion for a temporary restraining order and the trial court entered an order to show cause why it should not be granted.

Defendant opposed plaintiff's motion for a temporary restraining order, arguing that it was not bound by any deed restriction because it did not own the property at issue and, as a municipality, it had no legal authority to enforce deed restrictions; only a court of law had such authority. That is, defendant argued, deed restrictions are a matter of private contract and defendant was not a party to the contract. Defendant also was neither the buyer nor seller of the subject property. Accordingly, defendant argued, it was not a proper party to this lawsuit and it intended to file a dispositive motion in that regard. Defendant also argued that plaintiff did not even own property in Shelby Township and, thus, had no standing to bring this lawsuit. Defendant attached an affidavit from an employee of its assessing department which attested that plaintiff was not listed in township records as a property owner in Shelby Township.

\* \* \*

Townships have no inherent powers, but only possess the limited powers conferred on them by our constitution or by the Legislature through enabling statutes. *Hess v Cannon Twp*, 265 Mich App 582, 590; 696 NW2d 742 (2005).

\* \* \*

The trial court dismissed this action after concluding that plaintiff failed to establish that defendant was a proper party because, contrary to plaintiff's claims, defendant had no legal authority to enforce the purported deed restrictions at issue in this case. On appeal, plaintiff fails to set forth any legal support for its claims that defendant had legal authority to enforce the purported deed restrictions and, thus, should be held liable for failing to exercise such authority. . . . In any case, plaintiff's claims are without merit. Defendant was not authorized by law to adjudicate the alleged dispute between plaintiff and Redwood. And defendant was not required, or authorized, by law to enforce any alleged deed restrictions. Deed restrictions are not land use regulations imposed by the municipality like, for example, zoning ordinances. Accordingly, the trial court properly dismissed this case.

Although the township disputed whether TCF actually owned the subject property, the issue of ownership was not litigated or finally decided by the circuit court in that case. Nor did this Court render any opinion in that regard. The circuit court dismissed that action because the township lacked legal authority to enforce a deed restriction, and this Court affirmed that

decision on that limited basis. The question of the property's ownership was not essential to the judgment that was actually litigated in that matter. *Estes*, 481 Mich at 585; *Schultz*, 205 Mich App at 376-377. Indeed, TCD acknowledges that neither the circuit court nor this Court actually addressed or decided the ownership of the subject property in the *Town Ctr Flats* case. Plaintiff has not established that any decision inconsistent with the bankruptcy court's decision exists. Therefore, TCD has failed and cannot establish plain error that affected its substantial rights. Further, TCD is not entitled to amend its complaint to assert this theory of relief because such amendment would be futile. Accordingly, the trial court did not err by granting defendants' motions for summary disposition.

Because we affirm the trial court's decisions on the basis of collateral estoppel, we need not address defendants' alternative grounds for upholding the trial court's decision.

Affirmed.

/s/ Michael F. Gadola
/s/ Deborah A. Servitto
/s/ James Robert Redford