*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PETER J. ZIRNHELT,

Plaintiff-Appellant,

v

TOWNSHIP OF LONG LAKE and LONG LAKE
TOWNSHIP CLERK,

Defendants-Appellees.

UNPUBLISHED
October 29, 2019

No. 346895
Grand Traverse Circuit Court
LC No. 2018-034545-AW

Before: STEPHENS, P.J., and SERVITTO and RONAYNE KRAUSE, JJ.

PER CURIAM.

Plaintiff, Peter J. Zirnhelt, appeals by right the trial court's order granting summary disposition in favor of defendants, the Township of Long Lake (the Township) and the Long Lake Township Clerk (the Clerk). Plaintiff also appeals the trial court's immediately-preceding order denying plaintiff's request for a default judgment and granting defendants' motion to accept an untimely answer to plaintiff's first amended complaint. We affirm, but we remand for the trial court to consider whether to impose monetary sanctions upon defendants for their untimely answer to the first amended complaint.

## I. FACTUAL BACKGROUND

The background to this matter is plaintiff's longstanding efforts to induce the Township to "groom" certain trails in various Township parks.[1] Plaintiff historically made numerous requests to the Township to groom park trails. Plaintiff contends that the lack of grooming is wasteful and severely degrades the usefulness of the Township's parks. The Township contends that the parks are intentionally left in their natural state, its budget would not support plaintiff's proposed trail grooming, and a survey had found little public demand for winter trail grooming.

---

[1] Apparently, "grooming" is a practice of mechanically compacting or packing snow for the purpose of smoothing out surface irregularities and improving conditions for skiing, snowboarding, or snowmobiling.

Relevant to the instant matter, plaintiff circulated a petition and obtained 109 signatures seeking to have a trail-grooming proposal placed on the ballot for the November 6, 2018, general election. The proposal language was as follows:

> This proposal will require the Township to groom the snow on hiking trails for walking and cross-country skiing in three Township parks during the months of December through March of each budget year. Of its total $1,454,000 General Fund appropriations, the Township has allocated $183,000 to Parks and Recreation in its current budget but nothing for trail grooming. $43,000 is available in the current budget as a contingency for such grooming.

> Shall the Township annually, commencing with the current budget year, appropriate a minimum of $20,000 and a maximum of $30,000, adjusted annually according to the then current Cost of Living Adjustment, to cover the cost of grooming the snow on hiking trails for both walking and cross-country skiing in the following three Township parks during the months of December through March of each budget year when snow cover exceeds 5 inches and upon any additional snowfall of 3 inches or more: a) Cedar Run Creek Natural Area, b) Timbers Recreation Area and c) South Long Lake Forest Natural Area, with said monies appropriated as nearly as practical equally between the three named parks.

The Township's Deputy Clerk acknowledged receipt of the petition on July 27, 2018. On August 4, 2018, the Township Clerk advised plaintiff by letter that the Township would not place his proposed ballot language on the November 6, 2018, ballot, because the subject of plaintiff's "referendum"[2] was not authorized by law in townships.

## II. PROCEDURAL BACKGROUND

On August 15, 2018, plaintiff filed his complaint in this matter. Initially, plaintiff sought mandamus requiring the Township Clerk to certify his proposed ballot language for inclusion on the November 6, 2018, ballot. Notably, the 82-day deadline for certifying ballot language, pursuant to MCL 168.646a(2), was the next day. Plaintiff simultaneously filed an ex parte motion for a temporary restraining order or immediate relief, also seeking an order requiring the Township Clerk to certify his proposed ballot language by 4:00 p.m. on the next day. On August 16, 2018, defendants filed a response to plaintiff's motion for immediate relief, noting that plaintiff had created his own emergency timing despite having sought grooming of trails for years. Defendants also pointed out that (1) plaintiff's motion for immediate relief was effectively a motion for summary disposition, (2) none of the authority plaintiff cited actually dictated plaintiff's desired outcome, (3) there was no need for urgency because the matter could be placed on the 2020 ballot, and (4) a petition bearing 109 signatures out of 7,735 registered voters in the Township was unimpressive.

---

[2] Strictly speaking, plaintiff's petition sought an initiative, not a referendum. Const 1963, Art II, § 9, explains: "The people reserve to themselves the power to propose laws and to enact and reject laws, called the initiative, and the power to approve or reject laws enacted by the legislature, called the referendum."

On August 16, 2018, the trial court held a hearing on plaintiff's motion, characterizing it as a motion for preliminary injunction. Plaintiff argued that a fair reading of MCL 41.3[3] authorized a ballot proposal for the Township to expend specific money on a specific purpose. The trial court and defendants disagreed. The trial court also expressed concern over whether 109 signatures was sufficient, in response to which neither party was able to provide any directly applicable authority. The trial court denied plaintiff's motion, reasoning that the lack of clear authority permitting plaintiff's initiative suggested a low likelihood of success on the merits.

On August 23, 2018, both parties submitted a pre-trial statement. Plaintiff filed his first amended complaint the next day, on August 24, 2018. The trial court entered its formal order denying plaintiff's motion for a temporary restraining order on August 27, 2018. On September 13, 2018, the trial court entered a civil scheduling conference order. On September 14, 2018, the trial court entered notice that a non-jury trial was scheduled for January 29-30, 2019. On October 10, 2018, defendants moved for summary disposition pursuant to MCR 2.116(C)(8) and (10), generally reiterating that none of plaintiff's cited authority provided a right to direct a township to allocate specific funds out of its budget for a specific purpose and that 109 signatures was insufficient.

On October 16, 2018, plaintiff filed a request for a default judgment. Plaintiff argued that pursuant to MCR 2.108(C)(3), defendants had been required to file a responsive pleading to his first amended complaint no later than September 14, 2018  However, plaintiff pointed out that defendants had not submitted an answer or responsive motion by that deadline. As it turned out, defendants had filed an answer to plaintiff's first amended complaint earlier on October 16. The next day, on October 17, 2018, defendants filed a motion to accept their answer and in opposition to the request for default. Defendants candidly admitted that an answer had been prepared by September 12, but "for reasons that this author cannot explain," the answer had not been filed until plaintiff emailed defendants' counsel. Defendants asked the trial court to accept its untimely answer pursuant to MCR 2.108(E),[4] noting that defendants had otherwise complied with all timing requirements. Plaintiff filed two substantially identical responses to defendants' motions, both of which only asserted that defendants had not adequately rebutted plaintiff's entitlement to a default judgment.

On November 19, 2018, the trial court held a hearing on plaintiff's request for a default judgment and defendants' motion to accept their untimely answer. The trial court directly asked plaintiff whether, given defendants' active participation in the case, "isn't it kind of a technicality to have you win on [the basis of defendants' untimely filing] when they actually did respond on the merits?" Plaintiff did not address the substance of the trial court's question, but rather pointed out that defendants had not articulated any kind of excusable neglect. Defendants admitted that they had no explanation for failing to file their answer timely, but pointed out that

---

[3] We will discuss MCL 41.3 more fully below.

[4] MCR 2.108(E) provides, in relevant part, that after the expiration of an original time period for making a filing "or the doing of another act," the trial court "may, on motion, permit a party to act if the failure to act was the result of excusable neglect."

they had appeared and vigorously defended the case, and even technically filed their answer before plaintiff filed the request for default. The trial court ruled that

> The Court Rules favor adjudication on the merits not on technical failures. And, technically, an answer should have been filed timely, the defendant [sic] was in fact actively defending the case on the merits at a preliminary examination [sic] hearing and in other filings and I think the failure to file an answer is the true technicality . . . So, under the circumstances we'll not enter a default, and allow the answer that was filed to be accepted.

The trial court entered an order accordingly denying plaintiff's request for default judgment and granting defendants' motion to accept their untimely answer to plaintiff's first amended complaint.

Also on November 19, 2018, later in the day, the trial court held a hearing on defendants' motion for summary disposition. Defendants reiterated their prior position that

> in these circumstances as it relates to trail grooming and requiring a Township to create a particular line item within its budget, one, is not permitted by law, and, two, more importantly it usurps the authority that the statutes give expressly to the Township board.

Plaintiff provided a confusing argument seemingly pertaining to the history of MCL 41.3 and its relationship to the historic, but now largely discontinued, practice of townships holding annual meetings.[5] Plaintiff further argued that the word "vote" in the statute necessarily meant that the "electors"[6] were entitled to "decide whether or not the money will be appropriated for a particular purpose." Defendants acknowledged that if the Township *did* still hold annual meetings, and a vote at an annual meeting favored spending a specific amount of money on trail grooming, the Township's obligation to make that expenditure "would seem to be a much closer question than what we have now." Defendants argued that under present MCL 41.3, individuals had a right to go to township board meetings and ask for things, but MCL 41.3 did not confer a right to have specific language placed on a ballot.

The trial court ruled from the bench that members of the public have a right to make requests of their representatives, not to obligate their representatives to do anything. It held that "the right to assemble and communicate with the government does not include a right to have the government do what you say and follow those instructions." The trial court further ruled that MCL 41.3 allows township inhabitants to authorize the raising of sums of money, but did not allow the public

---

[5] "The words "annual meeting," when applied to townships, mean the annual meeting required by law to be held on the Saturday immediately preceding the first Monday in April." MCL 8.3d.

[6] An "elector" is simply an individual person who is entitled to vote in elections by virtue of age and residence for a minimum period. Const 1835, Art II, § 1; Const 1850, Art VII, § 1; Const 1908, Art III, § 1; Const 1963, Art II, § 1; see also MCL 168.492; MCL 168.10; MCL 41.102.

to specify specific expenditures that the Township is required to make . . . This is not a petition to request the sums of money be raised to defray proper charges and expenses arising of the Township, rather it is a request the [sic] Township take from its funds and spend money on a specific project, which is grooming certain trails and various public parks.

The trial court therefore held that the Township was not required to place plaintiff's language on its ballot. The trial court entered an order accordingly granting summary disposition in favor of defendants and closing the case. This appeal followed.

## III. ENTITLEMENT TO DEFAULT JUDGMENT

Plaintiff first argues that the trial court abused its discretion by denying his request for a default judgment because defendants' failure to timely file an answer to plaintiff's first amended complaint was, by their own admission, unexplained and unexcused. We disagree that the trial court abused its discretion by declining to impose the harsh sanction of entering a default judgment, although we conclude that the trial court should have at least considered lesser alternative sanctions.

## A. STANDARD OF REVIEW

The authority to grant a default judgment under any particular circumstance must be provided by applicable court rules. See *Luplow v Aubry Cleaners & Dyers, Inc*, 366 Mich 353, 356-358; 115 NW2d 110 (1962). Therefore, whether a trial court is permitted to enter a default is a question of law. Questions of law are reviewed de novo. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008).

However, a trial court is not necessarily required to enter a default merely because it can. See *Kowalski v Fiutowski*, 247 Mich App 156, 163-166; 635 NW2d 502 (2001). A default "is a drastic measure and should be used only with caution," generally meaning "only where the conduct of the offending party has been inexcusable." *In re Forfeiture of One 1987 GMC Station Wagon*, 186 Mich App 540, 545; 465 NW2d 334 (1990). "A trial court may properly refuse to enter a default judgment where the complexities of the issues require presentment of full proofs in order to do justice to the rights and liabilities of all of the parties, appearing or not." *Dobson v Maki*, 184 Mich App 244, 251; 457 NW2d 132 (1990).

The trial court's decision whether to enter a default is reviewed for an abuse of that discretion. *Barclay v Crown Bldg and Dev, Inc*, 241 Mich App 639, 642; 617 NW2d 373 (2000); *Huntington Nat'l Bank v Ristich*, 292 Mich App 376, 383; 808 NW2d 511 (2011). An abuse of discretion requires "far more than a difference in judicial opinion," and only occurs "when the trial court's decision is outside the range of reasonable and principled outcomes." *Saffian v Simmons*, 477 Mich 8, 12; 727 NW2d 132 (2007) (citation and internal quotation omitted). "A trial court necessarily abuses its discretion when it makes an error of law." *Ronnisch Constr Group, Inc v Lofts on the Nine, LLC*, 499 Mich 544, 552; 886 NW2d 113 (2016).

## B. ANALYSIS

It is long established that "[d]efaults are not favored and doubts generally should be resolved in favor of the defaulting party." *Wood v DAIIE*, 413 Mich 573, 586; 321 NW2d 653 (1982). Michigan jurisprudence favors the resolution of cases on their merits and disdains the elevation of formalities over substance. *North v Dep't of Mental Health*, 427 Mich 659, 662; 397 NW2d 793 (1986); *Wilcox v Moore*, 354 Mich 499, 504; 93 NW2d 288 (1958). Consequently, Michigan jurisprudence disfavors defaulting a party for "hypertechnical" procedural errors or for conduct that is not egregious. *Marposs Corp v Autocam Corp*, 183 Mich App 166, 169-172; 454 NW2d 194 (1990); *In re Forfeiture*, 186 Mich App at 545. In contrast, *after* a default has been entered, the policy in Michigan generally disfavors setting such defaults aside without very good reason. See *Alken-Zeigler, Inc v Waterbury Headers Corp*, 461 Mich 219, 229; 600 NW2d 638 (1999). The purpose of default procedures is to keep court dockets current, to expedite the resolution of claims, and to deter procrastination or obstruction. *Bigelow v Walraven*, 392 Mich 566, 576; 221 NW2d 328 (1974). Most of the law plaintiff cites is not binding because it is from other jurisdictions, unpublished, or both. Some of it is not even relevant because it pertains to setting aside a default rather than whether to enter a default.

Nonetheless, the gravamen of plaintiff's argument is reasonable and premised on the admitted facts that (1) defendants' answer to plaintiff's first amended complaint was untimely, and (2) defendants confessed to having no explanation for why that answer was not timely filed despite having been timely prepared. Plaintiff argues that, in the absence of any reason why defendants' neglect was "excusable" under MRE 2.108(E), the trial court was without discretion to accept defendants' late filing. Logically, if the trial court could not permit defendants to file a late answer, the trial court lacked any principled basis for refusing to enter a default judgment in plaintiff's favor. Therefore, plaintiff concludes that the trial court necessarily abused its discretion by refusing to grant his requested default judgment.

In its entirety, MCR 2.108(E) states:

> A court may, with notice to the other parties who have appeared, extend the time for serving and filing a pleading or motion or the doing of another act, if the request is made before the expiration of the period originally prescribed. After the expiration of the original period, the court may, on motion, permit a party to act if the failure to act was the result of excusable neglect. However, if a rule governing a particular act limits the authority to extend the time, those limitations must be observed. MCR 2.603(D) applies if a default has been entered.

It is not disputed that the "original period" for filing a response to plaintiff's first amended complaint had expired, and defendants properly filed a motion to accept their untimely filing pursuant to MCR 2.108(E). No party has suggested that any other rule applies limiting the trial court's authority to extend the time, and a default had not been entered. A plain reading of the second sentence of the court rule is that the "excusable neglect" requirement imposes a constraint upon the trial court's otherwise broad discretion.

-6-

"While many acts of neglect are not 'excusable', some are, else that word would not appear in the rule. Whether a given act of neglect is excusable is a matter for the circuit court." *Muntean v City of Detroit*, 143 Mich App 500, 510; 372 NW2d 348 (1985). Some case law seemingly holds that simply failing to respond to an admittedly received pleading 'hardly rises to the level of' being excusable. *Van Pembrook v Zero Mfg Co*, 146 Mich App 87, 96; 380 NW2d 60 (1985). However, *Van Pembrook* involved a defendant completely failing to participate in the case at all, followed by offering excuses this Court deemed "incredible." *Id*. at 91-96. The Court held specifically that the defendant's failure to respond was inexcusable "under these circumstances," indicating that the excusability of a particular omission should not be analyzed in a vacuum. *Id*. at 96. The circumstances in this case reflect no similar or analogous egregiousness.

Plaintiff cites further case law for the seeming proposition that an attorney's neglect is *per se* inexcusable. See *Yenglin v Mazur*, 121 Mich App 218, 221-223; 328 NW2d 624 (1982). However, *Yenglin* again involved a total failure to respond, and it addressed whether the trial court abused its discretion by declining to set aside a properly entered default. As noted, whether to set aside a default is a distinct question from whether to enter a default. Even if *Yenglin* could be understood as supporting plaintiff's proposed outcome, which we think it does not, *Yenglin* would conflict with both *Muntean* and *Van Pembrook*. Because all three cases were decided before November 1, 1990, they are precedential under the doctrine of stare decisis but not binding under the "first-out rule." MCR 7.215(C)(2), MCR 7.215(J)(1). If *Yenglin* conflicts with *Muntean*, we conclude that *Muntean* is better-reasoned: if it was impossible for neglect to be excusable, much of MCR 2.108(E) would be impermissibly rendered nugatory. If *Yenglin* conflicts with *Van Pembrook*, we likewise conclude that *Van Pembrook* is better-reasoned: discrete acts by parties should be considered in light of the totality of the party's conduct.

The applicable case law appears to hold consistently that a party's unexplained *total* failure to participate in a case cannot be "excusable" under MCR 2.108(E) or its predecessors. Consequently, it is critical that defendants *did* participate in this matter. Furthermore, the differences between plaintiff's original complaint and first amended complaint pertain only to relatively minor factual details: the first amended complaint did not add any new theories or substantive allegations. Indeed, the first amended complaint merely referred back to the original complaint's exhibits. As defendants pointed out, they had substantively responded to plaintiff's original complaint and otherwise complied with the trial court's scheduling orders. A review of the case law indicates that whether neglect is "excusable" may be determined on the basis of the entirety of a party's conduct throughout the proceedings and the totality of the circumstances. In effect, plaintiff would improperly focus strictly and narrowly on *only* defendants' failure to timely file an answer, whereas the trial court adopted a broader and more holistic evaluation of what it means for a party's neglect to be "excusable."

The trial court's approach of evaluating a party's tardiness in light of the entirety of the circumstances is the most consistent with case law and with general principles of jurisprudence. See *Vicencio v Ramirez*, 211 Mich App 501, 506-507; 536 NW2d 280 (1995) (holding that the trial court necessarily abused its discretion by failing to consider other options on the record before dismissing a case); *Richardson v Ryder Truck Rental, Inc*, 213 Mich App 447, 451; 540 NW2d 696 (1995) ("the trial court should carefully consider the circumstances of the case to determine whether a drastic sanction, such as dismissing a claim, is appropriate"). Precluding

the resolution of a cause on its merits where a party has not acted in bad faith and otherwise meaningfully participated in the case, and where any delay has been brief and has not actually prejudiced the other party, does not meaningfully serve "the deterrent purpose of the default mechanism." See *Bigelow*, 392 Mich at 576. Because acceptance of defendants' untimely answer is inextricably intertwined with the harsh sanction of what would effectively be a dismissal, the trial court was obligated to consider the entirety of the circumstances of the case and either expressly consider lesser sanction or decline to enter a default judgment. Given defendants' established participation in the case and forthright conduct, it was not unprincipled for the trial court to find defendants' single instance of neglect to be excusable in context. See *In re Forfeiture*, 186 Mich App at 545.

We also observe that the issues in this matter involve a question of public interest potentially affecting many people in the Township beyond just the named parties, which also weighs against a default. See *Dobson*, 184 Mich App at 251. Plaintiff suffered no prejudice from defendants' tardiness, because the trial court had already denied his preliminary injunction. Therefore, the earliest possible date his proposal could be placed on a ballot would, in any event, be in 2020. Finally, lesser alternative sanctions, such as ordering defendants to pay reasonable attorney fees and costs to plaintiff arising out of defendants' untimely filing, would have been reasonable and appropriate. See *Muntean*, 143 Mich App at 511-512. In contrast, it would have been unreasonable for the trial court to enter a default on the basis of a pure technicality where plaintiff suffered no prejudice from the delay, defendants clearly did not act in bad faith or demonstrate a pattern of neglect, the trial court had already determined that defendants might have a meritorious defense, the issues raised had some public significance, defendants had not completely failed to participate in the proceedings, and defendants' tardiness was not egregious. See *Marposs Corp*, 183 Mich App at 170-172.

We are concerned that the trial court did not even consider imposing lesser sanctions. *Muntean*, 143 Mich App at 511. We therefore remand for the trial court to have the opportunity to state on the record whether this omission was intentional, or in the alternative to consider and impose such lesser sanctions if it believes doing so would be appropriate. However, under the circumstances, the trial court did not abuse its discretion by accepting defendants' untimely answer to plaintiff's first amended complaint, and it properly declined to enter a default judgment in favor of plaintiff. We therefore need not consider plaintiff's argument that the trial court should not have entertained defendants' motion for summary disposition.

IV. ENTITLEMENT TO BALLOT PROPOSAL

Plaintiff also argues that he was substantively entitled to have his initiative language placed on the next election ballot in the Township, mostly based on plaintiff's interpretation of MCL 41.3. We disagree.

A. STANDARD OF REVIEW

We review a trial court's "grant or denial of summary disposition de novo" on the basis of the entire record "to determine if the moving party is entitled to judgment as a matter of law." *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). When reviewing a motion under MCR 2.116(C)(10), which "tests the factual sufficiency of the complaint," this Court

-8-

considers all evidence submitted by the parties in the light most favorable to the non-moving party and grants summary disposition only where the "evidence fails to establish a genuine issue regarding any material fact." *Id*. at 120. A motion brought under MCR 2.116(C)(8) should be granted only where the complaint is so legally deficient that recovery would be impossible even if all well-pleaded facts were true and construed in the light most favorable to the non-moving party. *Id*. at 119. Only the pleadings may be considered when deciding a motion under MCR 2.116(C)(8). *Id*. at 119-120. Appellate courts will affirm a right result arrived at on the basis of wrong reasoning. *Kirl v Zinner*, 274 Mich 331, 336; 264 NW 391 (1936).

This Court likewise reviews de novo questions of statutory construction, with the fundamental goal of giving effect to the intent of the Legislature. *Weakland v Toledo Engineering Co, Inc*, 467 Mich 344, 347; 656 NW2d 175 (2003), amended on other grounds 468 Mich 1216 (2003). The goal of statutory interpretation is to determine and give effect to the intent of the Legislature, with the presumption that unambiguous language should be enforced as written. *Gladych v New Family Homes, Inc*, 468 Mich 594, 597; 664 NW2d 705 (2003). If the language is unambiguous, "the proper role of a court is simply to apply the terms of the statute to the circumstances in a particular case." *Veenstra v Washtenaw Country Club*, 466 Mich 155, 160; 645 NW2d 643 (2002).

## B. ANALYSIS

As noted, most of plaintiff's argument is based on MCL 41.3, which provides in full:

> The inhabitants of a township shall have the power, by a vote of the registered electors of the township, to grant and vote sums of money, not exceeding amounts limited by law, that they consider necessary for defraying proper charges and expenses arising in the township. The township board or a township officer shall not create a debt or liability against the township, or issue a warrant, certificate, or order for the payment of money, unless the creation of the debt or liability or the payment of the money has been authorized by vote of the registered electors of the township or by law.

Critically, "MCL 41.3 is not applicable to townships that have abolished the practice of holding an annual meeting." *Hess v Cannon Twp*, 265 Mich App 582, 597; 696 NW2d 742 (2005). *Hess* relied on MCL 41.8(7), which provides in full:

> In a township that does not hold an annual meeting, powers that could have been exercised by the electors at an annual meeting may be exercised by the township board.

*Hess* reasoned that in townships that no longer hold annual meetings, their boards "have assumed all powers . . . that could have been exercised by the registered electors at the annual meeting and, thus, are authorized to exercise all authority granted under MCL 41.3." *Hess*, 265 Mich App at 597. It is not disputed that the Township has discontinued the practice of holding annual meetings. Consequently, any powers conferred by MCL 41.3 are not conferred upon the Township's electors, but rather upon the Township's board.

Plaintiff does not dispute that township boards *can* exercise the powers conferred by MCL 41.3. Rather, he contends that MCL 41.8(7) did not effectuate an *exclusive* transfer of those powers, so those powers may still be exercised by the voters. Plaintiff advances two arguments in support of his position, and we disagree with both.

First, plaintiff contends that this Court's holding in *Hess* is dicta because it was unnecessary to resolve the issue at hand. In *Hess*, the specific question was whether the electors were required to approve a particular expenditure, not whether the electors were permitted to mandate an expenditure. *Hess*, 265 Mich App at 596. However, plaintiff misunderstands the concept of "dicta." This Court's determination that MCL 41.3 did not apply to townships that no longer held annual meetings was neither incidental nor inessential. See *Allison v AEW Capital Mgmt, LLP*, 481 Mich 419, 437; 751 NW2d 8 (2008). Rather, this Court's determination squarely resolved the issue of the defendant township's authority.

Secondly, plaintiff argues that *Hess* was wrong because MCL 41.8(7) states that the powers at issue "*may* be exercised by the township board" (emphasis added). Plaintiff reasons that "may" connotes a non-exclusive grant of authority which, therefore, must be shared with the electors. The word "may" *generally* indicates a grant of discretion or permission, especially by contrast to the word "shall," which generally is considered mandatory. See *Manuel v Gill*, 481 Mich 637, 647; 753 NW2d 48 (2008). However, the courts have frequently found the word "may" to impose a mandate when read in context, especially in statutes conferring powers upon public entities to be exercised for the benefit of the public. See *Kment v City of Detroit*, 109 Mich App 48, 61-64; 311 NW2d 306 (1981), citing numerous cases.

Importantly, MCL 41.8(7) refers to "powers that *could have* been exercised by the electors" (emphasis added), and it provides only one option for who may exercise those powers. When read as a whole, the only reasonable reading is that MCL 41.8(7) takes power away from the electors and transfers it to the township boards. Even if "may" should be considered merely permissive, the fact that the board has discretion whether to exercise certain power does not necessarily mean that anyone else shares that discretion. The provision of a single option, even phrased as a permissive option, does not establish that any other options are also permissible. See *Republic Steel Corp v Maddox*, 379 US 650, 658-659; 85 S Ct 614; 13 L Ed 2d 580 (1965). Indeed, an enumeration of options strongly suggests the exclusion of others. *Sebewaing Indus, Inc v Village of Sebewaing*, 337 Mich 530, 545-546; 60 NW2d 444 (1953). Plaintiff's interpretation of MCL 41.8(7) would require radically rewriting the statute by inserting an additional grant of power not expressed. *Hess* was therefore correctly decided, and pursuant to MCL 41.8(7), the Township's electors no longer hold any power under MCL 41.3.

In any event, the historically-understood purpose of MCL 41.3 and its predecessor statutes, to the minimal extent they have been discussed in case law, does not support plaintiff's construction. In *Tweed v Metcalf*, 4 Mich 579, 591-592 (1857), our Supreme Court, citing the 1838 predecessor to MCL 41.3,[7] explained that the power to raise money was vested in the

---

[7] "Townships shall have power, at any legal meeting, to grant and vote such sums of money as they shall judge necessary for the purpose of supporting and maintaining the poor, and for all

electors,[8] but no purpose for the funds needed to be specified. In *Harding v Bader*, 75 Mich 316, 317-320; 42 NW2d 942 (1889), our Supreme Court, citing How. Stat. § 671,[9] explained that the question of whether to raise a sum of money for ordinary expenses of the township must be submitted to the electors at an annual meeting. See also, *Diamond Match Co v Village of Ontonagon*, 140 Mich 183, 186-187; 103 NW 578 (1905). Furthermore, the context to the statute was that township boards were authorized to levy taxes on their own initiative only if the voters had refused or neglected to do so, "and unless the proposition was submitted to [the voters,] [the voters] cannot be said to have done either." *Tillotson v Webber*, 96 Mich 144, 154; 55 NW 837 (1893); see also *Kelsey v Burns Twp*, 223 Mich 173, 180; 193 NW 822 (1923). The apparent purpose of MCL 41.3 and its predecessors was not to grant the electors of a township a right to dictate specific expenditures. Rather, the purpose was for the township to ask the voters to authorize the raising of money for the township to use.

The language in present MCL 41.3 does not differ substantively from the versions addressed above. However, plaintiff attempts to make much of the distinction between "qualified electors" and "registered electors." Plaintiff correctly observes that annual township meetings were generally required until the effective date of 77 PA 1989, which both abolished township meetings by default and altered "qualified" to "registered" in MCL 41.3. Plaintiff deduces that the Legislature intended the change from "qualified" to "registered" to indicate voting at an election rather than a meeting. Plaintiff's deduction is reasonable: registration to vote in an election has long been required in Michigan, see *People v Wattles*, 13 Mich 445, 450-451 (1865), but registration to vote in an *election* might have been irrelevant to voting at a township *meeting*.[10] However, MCL 41.8(7) was enacted by 101 PA 1990, *after* the Legislature had changed "qualified" to "registered" in MCL 41.8(7). A more recent and specific law generally takes precedence over an older and less specific law. *Parise v Detroit Entertainment,*

---

other necessary and proper charges arising in the township. R.S. 1838, Part First, Title IV, Ch 1, § 3.

[8] Beginning with R.S. 1846, Ch 16, § 3, reference to "townships" was replaced with "the inhabitants of each township," and the vote was specified to be by electors. Later versions of the statute retained those two alterations.

[9] "The inhabitants of each township shall have the power at any legal meeting, by a vote of the qualified electors thereof, to grant and vote sums of money, not exceeding such amounts as are or may be limited by law, as they shall deem necessary for defraying all proper charges and expenses arising in the township; nor shall any board, officer, or officers, create any debt or liability against the township, or issue any warrant, certificate, or order, for the payment of money, except when the creation of such debt or liability, or the payment of such money, has been authorized by such vote or by the provisions of law." How. Stat. § 671, as amended by 212 PA 1875.

[10] Alternatively, if registration had been historically required to vote at a township meeting, the Legislature's change to the nomenclature in MCL 41.3 was likely intended to improve clarity rather than alter substance. See *Indenbaum v Michigan Board of Medicine (After Remand)*, 213 Mich App 263, 282; 539 NW2d 574 (1995).

*LLC*, 295 Mich App 25, 27-28; 811 NW2d 98 (2011). Thus, the enactment of MCL 41.8(7) transferred any powers conferred by MCL 41.3 to the Township board.

Plaintiff next contends that Const 1963, Art IX, § 6, and the Property Tax Limitation Act (PTLA), MCL 211.201 *et seq.*, together "constitute a comprehensive mechanism for the *raising* of funds for proper township purposes" which would render MCL 41.3 meaningless if MCL 41.3 did not confer the power to direct specific expenditures. In other words, plaintiff implicitly contends that Const 1963, Art IX, § 6 and the PTLA are exhaustive and "occupy the field" of raising funds by townships for township purposes. Presuming plaintiff is correct, then MCL 41.3 might be implicitly repealed, given the historical understanding given to the statute. Plaintiff's alternative, as also discussed above, entails impermissibly rewriting the statute. Either way, a harmonious resolution exists that entails neither an implicit repeal nor a rewrite.

The doctrine of *expressio unius est exclusio alterius* generally pertains to "all others of a similar nature in that same field." *Sebewaing Indus*, 337 Mich at 545. Notably, MCL 41.3 does not specify *how* sums of money should be raised, but it does specifically discuss the taking on of debts. It is known that governmental entities sometimes issue bonds or borrow sums of money for various purposes. It seems obvious that MCL 41.3 does not necessarily address the same kind or manner of revenue-raising addressed by Const 1963, Art IX, § 6 and the PTLA. Furthermore, plaintiff has not cited any provision of the PTLA implicitly or explicitly indicating that townships are prohibited from imposing additional taxes. Therefore, Const 1963, Art IX, § 6 and the PTLA do not appear to have any bearing on MCL 41.3.

Finally, the parties dispute the significance of the Uniform Budgeting and Accounting Act (UBAA), MCL 141.421 *et seq*. Defendants argue that pursuant to MCL 141.434, MCL 141.435, and MCL 141.436, the Township's board is granted sole authority to set a budget and determine where to spend money. Plaintiff mostly disputes defendants' argument by citing the UBAA's title, which is not controlling authority, *Malcolm v City of East Detroit*, 437 Mich 132, 143; 468 NW2d 479 (1991), and other provisions within the UBAA that mostly show that the UBAA covers a wide variety of topics. Plaintiff also cites MCL 141.436(6), which provides:

> The legislative body shall determine the amount of money to be raised by taxation necessary to defray the expenditures and meet the liabilities of the local unit for the ensuing fiscal year, shall order that money to be raised by taxation, within statutory and charter limitations, and shall cause the money raised by taxation to be paid into the funds of the local unit.

Plaintiff argues that MCL 141.436(6) does not preclude requiring an expenditure to be approved by the electors pursuant to MCL 41.3. We agree. However, plaintiff's argument is consistent with the historical understanding of MCL 41.3, under which the townships submit to the voters the question of whether to raise funds. Otherwise, plaintiff's contention that the UBAA is "procedural" does not seem to support his argument that MCL 41.3 confers upon township voters the right to dictate specific expenditures.

In the trial court, plaintiff cited Const 1963, Art I, § 3.[11] Plaintiff provided little supporting argument, and he seemingly abandons any citation to Art I, § 3 on appeal. However, it is worth noting that the right granted "to petition the government for redress of grievances" does not appear to mean a right to require a proposal to be placed on a ballot by the mechanism of a petition. "Petition" means "a formal written request made to an official person or organized body," "to make a request," or "to make a formal written request." *Merriam-Webster's Collegiate Dictionary* (11th ed). As defendants point out, plaintiff is free to ask the Township's board for anything he wishes. However, for better or for worse, we simply do not live in a "true" democracy, and the people generally have no direct say in the operation of government, but rather only in choosing who should serve as a representative in government. See *Stand Up for Democracy v Secretary of State*, 492 Mich 588, 599; 822 NW2d 159 (2012) (MARY BETH KELLY, J.). The right to place a matter on the ballot by initiative or referendum is reserved by Const 1963, Art II, § 9, but by its plain terms only refers to the Legislature.

The Legislature has explicitly conferred upon home rule cities the power to provide for initiatives and referendums in a city's charter. MCL 117.4i(g). The Legislature has explicitly directed charter counties to provide for initiatives and referendums in their charters. MCL 45.514(1)(n). Const 1963, Art IX, § 6 does seem to provide for the option of implementing an initiative procedure within townships, but only within the context of adopting certain tax limitations. In any event, none of the above provisions actually establish an initiative process, but rather permit or direct an initiative process to be established. The only express initiative provisions we can find for townships pertain to reestablishing annual meetings, MCL 41.8(5), and setting officers' salaries, MCL 41.95(3), (6).

A number of referendum provisions also exist, as indicated by the attachments to defendants' letter returning plaintiff's petition. However, the only such provision that seems potentially relevant, pertaining to township parks, only refers to a referendum in the catchline, and not in the actual statute itself. MCL 41.424. The catchline is not part of the statute or relevant to construction of the statute. MCL 8.4b. In any event, plaintiff does not cite to or rely on MCL 41.424. Township officials are, of course, subject to recall. MCL 168.951. Thus, there appear to be various authorizations for the inhabitants of a township to place particular kinds of proposals on ballots. Critically, however, no *general* right to do so for any arbitrary matter appears to exist. Because plaintiff has not articulated any authority specifically permitting him to place on the ballot a proposal to dedicate specific funds for trail grooming, it is unnecessary to consider whether 109 signatures would be sufficient. The trial court properly granted summary disposition in favor of defendants.

V. CONCLUSION

The trial court did not abuse its discretion by accepting defendants' untimely answer to plaintiff's first amended complaint or by refusing to enter a default judgment in favor of plaintiff. The trial court also properly determined that MCL 41.3 does not give township inhabitants a right to direct how a township board should spend money, and no process exists for township

---

[11] "The people have the right peaceably to assemble, to consult for the common good, to instruct their representatives and to petition the government for redress of grievances."

inhabitants to require any arbitrary matter to be placed on a ballot. However, we remand for the limited purpose of directing the trial court to consider whether lesser sanctions in favor of plaintiff should be imposed upon defendants for their untimely responses to plaintiff's first amended complaint, and if so, to impose any sanctions it deems appropriate. Nothing in this opinion should be construed as directing or expecting any particular outcome or manner in which the trial court should proceed with its consideration.

Affirmed, but remanded for consideration of sanctions consistent with this opinion. We retain jurisdiction. An issue of public significance being involved, we direct that the parties shall bear their own costs on appeal. MCR 7.219(A).

/s/ Cynthia Diane Stephens
/s/ Deborah A. Servitto
/s/ Amy Ronayne Krause

# Court of Appeals, State of Michigan

# ORDER

Peter J Zirnhelt v Township of Long Lake

Docket No. 346895

LC No. 2018-034545-AW

Cynthia Diane Stephens
Presiding Judge

Deborah A. Servitto

Amy Ronayne Krause
Judges

Pursuant to the opinion issued concurrently with this order, this case is REMANDED for further proceedings consistent with the opinion of this Court. We retain jurisdiction.

Proceedings on remand in this matter shall commence within 56 days of the Clerk's certification of this order, and they shall be given priority on remand until they are concluded. The proceedings on remand are limited to consideration of the propriety of imposing sanctions upon defendants based on the untimeliness of their response to plaintiff's first amended brief, and if so, to determine what amount of sanctions is proper and impose those sanctions.

The parties shall promptly file with this Court a copy of all papers filed on remand. Within seven days after entry, appellant shall file with this Court copies of all orders entered on remand.

The transcript of all proceedings on remand, if any, shall be prepared and filed within 21 days after completion of the proceedings.

/s/ Cynthia Diane Stephens

October 29, 2019